FILED

2016 JAN -4  PM 4: 58

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| **DONALD NEWMAN** | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **Civil Action No. 1:15-cv-913** |
| | § | |
| **HAVIDAN RODRIGUEZ;** | § | |
| **GUY BAILEY; CYNTHIA BROWN;** | § | |
| **DAHLIA GUERRA; PAMELA** | § | |
| **ANDERSON-MEJIAS; UNIVERSITY** | § | |
| **OF TEXAS SYSTEM;** | § | |
| **UNIVERSITY OF TEXAS RIO** | § | |
| **GRANDE VALLEY; WALLACE HALL;** | § | |
| **STEVEN HICKS; ROBERT** | § | |
| **STILLWELL; PAUL FOSTER;** | § | |
| **JEFFERY HILDEBRAND; EUGENE** | § | |
| **POWELL; ERNEST ALISEDA;** | § | |
| **BRENDA PEJOVICH; and ALEX** | § | |
| **CRANBERG** | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

1.   Plaintiff Donald Newman brings this action against Defendants Havidan Rodriguez, Guy Bailey, Cynthia Brown, Dahlia Guerra and Pamela Anderson-Mejias ("University Official Defendants"), University of Texas Rio Grande Valley and University of Texas System ("State University Defendants"), and past and current University of Texas Board of Regents members Wallace Hall, Steven Hicks, Paul Foster, Jeffery Hildebrand, Eugene Powell, Ernest Aliseda, Brenda Pejovich and Alex Cranberg ("Regent Defendants") under 42 U.S.C. § 1983 for violations of Plaintiff's due process rights under the Fifth and Fourteenth Amendments.  Plaintiff seeks relief for losses sustained as a result of the Regent Defendants' and University Official

Defendants' termination of Plaintiff's tenure without due process. Additionally, Plaintiff seeks relief for losses sustained as a result of the University Official Defendants' denial of the vested right afforded Plaintiff by Texas Government Code § 657, Veteran's Employment Preferences. Further, Plaintiff seeks injunctive relief requiring Defendants to restore Plaintiff's tenured status and employment.

## I.
## PARTIES

2.     Plaintiff, Donald Newman, is an individual who resides in Edinburg, Texas. From 1998 to 2014, Newman was a tenured professor at University of Texas–Pan American ("UTPA"), the predecessor entity of University of Texas Rio Grande Valley. Newman is currently employed as a lecturer without tenure at University of Texas Rio Grande Valley ("UTRGV").

3.     Defendant, Havidan Rodriguez, is an individual who presides as the Provost and Executive Vice President for Academic Affairs of UTRGV. Rodriguez was formerly the Provost and Executive Vice President for Academic Affairs of UTPA. Rodriguez is sued in his individual capacity and in his official capacity as an official of UTRGV and UTPA involved in the development and implementation of the hiring policy and procedure. Rodriguez has already been served and appeared in this case.

4.     Defendant, Guy Bailey, is an individual who presides as President of UTRGV. Bailey is sued in his individual capacity and in his official capacity as an official of UTRGV involved in the development and implementation of the hiring policy and procedure. Bailey has already been served and appeared in this case.

5.     Defendant, Cynthia Brown, is an individual who presides as Deputy Provost of UTRGV. Brown was formerly Provost and Vice President for Academic Affairs ad interim of UTPA. Brown is sued in her individual capacity and in her official capacity as an official of

2

UTRGV and UTPA involved in the development and implementation of the hiring policy and procedure. Brown has already been served and appeared in this case.

6.    Defendant, Dahlia Guerra, is an individual who presides as the Dean of Interim Dean of the English Department at UTRGV. Guerra was formerly the Dean of the College of Arts and Humanities at UTPA. Guerra is sued in her individual capacity and in her official capacity as an official of UTRGV and UTPA involved in the development and implementation of the hiring policy and procedure. Guerra has already been served and appeared in this case.

7.    Defendant, Pamela Anderson-Mejias, is an individual who presides as Associate Dean for Graduate Education, College of Liberal Arts at UTRGV. Mejias was formerly the Department Chair of the College of Arts and Humanities at UTPA. Mejias is sued in her individual capacity and in her official capacity as an official of UTRGV and UTPA involved in the development and implementation of the hiring policy and procedure. Mejias has already been served and appeared in this case.

8.    Defendant, University of Texas Rio Grande Valley is a Texas public university in the University of Texas System ("UT System"). UTRG is sued for injunctive relief only, seeking a reinstatement of Plaintiff's tenured position. UTRG has already been served and appeared in this case.

9.    Defendant, University of Texas System, is an agency of the State of Texas which oversees and administers a number of higher education institutes, including UTRGV and UTPA. UT is sued for injunctive relief only, seeking a reinstatement of tenure that was granted by UT System to Plaintiff in 1998 UT System has already been served and appeared in this case.

10.    Wallace Hall is a current member of the University of Texas Board of Regents. Hall is sued in his individual capacity and in his official capacity as a member of the Board of

Regents involved in process of consolidating programs at University of Texas at Brownsville ("UTB") and University of Texas—Pan American and the development and approval of the process to hire tenured faculty from those universities at UTRGV. Hall may be served at the Office of the Board of Regents, 201 West 7th Street, Austin, Texas 78701.

11.    Steven Hicks is a former member of the University of Texas Board of Regents. Hicks is sued in his individual capacity and in his official capacity as a member of the Board of Regents involved in process of consolidating programs at University of Texas at Brownsville and University of Texas—Pan American and the development and approval of the process to hire tenured faculty from those universities at UTRGV. Hicks may be served at the Office of the Board of Regents, 201 West 7th Street, Austin, Texas 78701.

12.    Robert Stillwell is a former member of the University of Texas Board of Regents. Stillwell is sued in his individual capacity and in his official capacity as a member of the Board of Regents involved in process of consolidating programs at University of Texas at Brownsville and University of Texas—Pan American and the development and approval of the process to hire tenured faculty from those universities at UTRGV. Stillwell may be served at the Office of the Board of Regents, 201 West 7th Street, Austin, Texas 78701.

13.    Paul Foster is a current member of the University of Texas Board of Regents. Foster is sued in his individual capacity and in his official capacity as a member of the Board of Regents involved in process of consolidating programs at University of Texas at Brownsville and University of Texas—Pan American and the development and approval of the process to hire tenured faculty from those universities at UTRGV. Foster may be served at the Office of the Board of Regents, 201 West 7th Street, Austin, Texas 78701.

4

14.    Jeffery Hildebrand is a current member of the University of Texas Board of Regents.  Hildebrand is sued in his individual capacity and in his official capacity as a member of the Board of Regents involved in process of consolidating programs at University of Texas at Brownsville and University of Texas—Pan American and the development and approval of the process to hire tenured faculty from those universities at UTRGV.  Hildebrand may be served at the Office of the Board of Regents, 201 West 7th Street, Austin, Texas 78701.

15.    Eugene Powell is a past member of the University of Texas Board of Regents.  Powell is sued in his individual capacity and in his official capacity as a member of the Board of Regents involved in process of consolidating programs at University of Texas at Brownsville and University of Texas—Pan American and the development and approval of the process to hire tenured faculty from those universities at UTRGV.  Powell may be served at the Office of the Board of Regents, 201 West 7th Street, Austin, Texas 78701.

16.    Ernest Aliseda is a current member of the University of Texas Board of Regents.  Aliseda is sued in his individual capacity and in his official capacity as a member of the Board of Regents involved in process of consolidating programs at University of Texas at Brownsville and University of Texas—Pan American and the development and approval of the process to hire tenured faculty from those universities at UTRGV.  Aliseda may be served at the Office of the Board of Regents, 201 West 7th Street, Austin, Texas 78701.

17.    Brenda Pejovich is a current member of the University of Texas Board of Regents.  Pejovich is sued in her individual capacity and in her official capacity as a member of the Board of Regents involved in process of consolidating programs at University of Texas at Brownsville and University of Texas—Pan American and the development and approval of the process to hire

tenured faculty from those universities at UTRGV.  Pejovich may be served at the Office of the Board of Regents, 201 West 7th Street, Austin, Texas 78701.

18.     Alex Cranberg is a current member of the University of Texas Board of Regents. Cranberg is sued in his individual capacity and in his official capacity as a member of the Board of Regents involved in process of consolidating programs at University of Texas at Brownsville and University of Texas—Pan American and the development and approval of the process to hire tenured faculty from those universities at UTRGV.  Cranberg may be served at the Office of the Board of Regents, 201 West 7th Street, Austin, Texas 78701.

## II.
## JURISDICTION AND VENUE

19.     This court has jurisdiction over the subject matter of this complaint under 42 U.S.C. § 1983 because Plaintiff was deprived of his constitutional rights by individuals acting under color of law.  Specifically, the award of tenure in 1998 granted Plaintiff a constitutionally protected property interest in continued employment.  Defendants deprived Plaintiff of his tenure and continued employment under color of law without due process.

20.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because all parties reside in the same state and the Regent Defendants are located in Austin, Texas.  Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in Austin, Texas.  Specifically, the Regent Defendants met and conducted business in Austin, Texas to formulate the process of consolidating programs at University of Texas at Brownsville and University of Texas—Pan American and to develop and approve the process to hire tenured faculty from those universities at UTRGV.

### III.
### NATURE OF CASE

21.     Tenure is the bedrock of our nation's academic system, impacting such important issues as academic freedom and the creation of an educated populace.  Tenure, once granted, may only be revoked under very limited circumstances, with good cause, and after formal due process. Donald Newman is a respected scholar with a long and distinguished career as a professor in the University of Texas System.  Based on his academic achievement and excellent scholarship, he was awarded tenure in 1998 and worked diligently as a member of the university faculty for the following sixteen years.  Despite his loyalty and record of achievement, though, Defendants unfairly stripped Newman (along with dozens of other tenured professors) of tenure without notice, cause or due process when it created a new successor university.  Further, although he qualified for automatic hiring and tenure at the new successor university under procedures established by the Regent Defendants, University of Texas System and the University Official Defendants, the University Official Defendants refused to follow those procedures and did not hire Newman as a tenured professor.  Instead, the university later hired him as a non-tenured contract lecturer at reduced pay and with none of the benefits and privileges that his tenure had earned.

### III.
### FACTS AND ALLEGATIONS

**A.     THE CREATION OF UTRGV**

22.     The Rio Grande Valley of Texas has traditionally been served by two universities: the University of Texas–Pan American located in Edinburg, Texas and the University of Texas at Brownsville located in Brownsville, Texas.  In 2014, these two universities were combined to form one university for the entire area, named University of Texas Rio Grande Valley.

7

23.     UTRGV is comprised of the same facilities that had comprised the predecessor universities. Students who had been enrolled in or accepted to the predecessor universities were automatically transferred to UTRGV. Further, UTRGV has substantially the same academic programs as the predecessor universities. In May of 2014, the Regent Defendants voted to approve a measure consolidating the programs at UTB and UTPA in order to establish UTRGV.

24.     UTRGV was created through a merger and consolidation of the two predecessor universities, with the same obligations to its tenured faculty as had existed amongst the predecessor universities. The enabling statute that created UTRGV mandates that the board of regents, in creating the new university, would have "all the powers and duties provided by prior law, as that law existed at the time the applicable university or other entity was abolished with regard to: (1) The University of Texas at Brownsville, The University of Texas—Pan American, and any other institution, college, school, or entity abolished under the Act authorizing the creation of the university; and (2) any facility, operation, or program that is transferred to the university . . . ."[1]

25.     Befitting its status as a continuation of UTPA, the new university UTRGV inherited the academic accreditation of its predecessor university. The Southern Association of Colleges and Schools Commission on Colleges accredits UTRGV with the 2007 accreditation of UTPA. The next accreditation review is not scheduled until 2017.

26.     UTPA ceased to operate as a university as of the final Summer session of 2015. UTRGV began its first academic session in Fall of 2015.

---

[1] Texas Education Code § 79.02(f).

## B.   FACULTY HIRING PROCESS AT UTRGV

27.   In May of 2014, the Regent Defendants and UTRGV, in conjunction with UT System, developed policies and procedures for hiring faculty at the new university. The stated purpose was to facilitate the employment of as many faculty of The University of Texas at Brownsville and University of Texas–Pan American as was prudent and practical.

28.   But, appealing to what it described as the "unique considerations . . . inherent in the creation of UTRGV and abolition of UTB and UTPA" the Regent Defendants, through the UT System announced that the policies and rules of the predecessor universities would be suspended. Having thus suspended the rules, the Regent Defendants and UT System then terminated all tenure at UTB and UTPA, establishing a new process for faculty to apply for hiring and tenure at UTRGV.

29.   The UTRGV hiring process occurred in phases. Phase One of the process covered "The Hiring of Tenured and Tenure-Track Faculty Members to the University of Texas Rio Grande Valley." According to the policy, the President "shall recommend that the Board of Regents grant tenure" to an individual who previously had tenure, and who met a list of qualifications.

30.   The qualifications for receiving recommendation for tenure at UTRGV were:

(a) holding tenure at one of the predecessor universities;

(b) timely completion of application forms;

(c) no disciplinary actions in the past seven years;

(d) not currently a target of allegations which could result in termination;

(e) has not received an overall "unsatisfactory" or "does not meet expectation" ratings on either of the two most recent annual reviews or the individual's most recent comprehensive periodic review;

(f) assigned to an academic unit that will exist at UTRGV;

(g) sufficient number of faculty positions budgeted in that academic unit to grant tenure to all who qualify; and

(h) completion of criminal background check, if not already completed.

31.     All faculty holding tenure at one of the predecessor universities were invited to apply for a tenured position at UTRGV, subject to the qualifications listed above. The tenure was considered continuous with the tenure at the predecessor university, and the professors' years of tenure (for retirement and other purposes) were counted as if they had been at the same university all along. Ultimately, 608 tenured professors applied for positions at UTRGV. Of those, 583 (96%) were offered tenured positions at UTRGV. The 25 tenured professors who were not offered tenured positions at UTRGV were supposed to be sent emails listing the qualifications which had been lacking.

**C.    DONALD NEWMAN'S APPLICATION FOR TENURED POSITION AT UTRGV**

32.     Donald Newman has had a distinguished career as a professor of English for over twenty three years. Newman was granted tenure at UTPA in 1998 and given the position of full Professor, a title he held until the dissolution of UTPA. He has numerous publications, a record of successful instruction from undergraduate to graduate levels, and steady contributions in national, institutional and community service. His three books and numerous contributions to academic journals make him a significant voice in eighteenth-century literature scholarship. Newman is also a veteran of the United States Army, where he served honorably from 1966 to 1969, including two years of service in Vietnam.

33.     Throughout his period of tenure at UTPA, Newman underwent annual performance reviews by the university. For every single annual performance review, Newman received an Overall Evaluation rating of either "Exceeds Expectations" or "Meets Expectations."

34.     In 2013, UTPA conducted a Post-Tenure Review, a comprehensive review of the previous six years of Newman's employment. The review did not have an "Overall Evaluation"

rating. Instead, the review committee (comprised of the Department Committee, Department Chair, and Dean) rated Newman in three separate categories and issued "Recommendations."

35.    Regarding two of the categories, Professional Achievement and Professional Services, the review committee found that Newman had "exceeded the department criteria." With regard to the third category, "Teaching Effectiveness" the committee noted that Newman "designed new courses and enhanced his coursework with online technology. However, in order to meet the new department criteria of 1) peer reviews with 80% satisfaction of in-class performance, and 2) student evaluations of 80% Good to Excellent, he should work with the Chair to develop a plan to meet these expectation." The reviewers were split with regard to their Recommendations, some reviewers recommending a vote of "Does Not Meet Expectations" while the Dean recommended "Meets Expectations."

36.    The '80% student evaluation Good to Excellent' criterion for Teaching Effectiveness was a new policy that had just been implemented in 2012. Previously, and throughout most of the period covered by Newman's Post-Tenure Review, the policy held that the expectation for Teaching Effectiveness was that a professor receive at least 70% "Good to Excellent" ratings from students in their post-class teacher evaluations. Newman met this criterion every year, and received perfect "Exceeds Expectations" for every annual performance review. For the six years covered by the Post-Tenure Review period, Newman was never given a single indication that the university was dissatisfied with his teaching performance.

37.    The new policy mandated that a professor must receive at least 80% "student evaluation Good to Excellent" ratings in order to meet expectations. The new policy went into effect in February of 2012—less than one year before the end of the six year review period. Nevertheless, the review committee retroactively applied the new criterion to the *entire* six-year

period and recommended that, despite the unblemished record of annual evaluations showing "Exceeds Expectations" or "Meets Expectations" for every prior year, Newman was required meet with the Chair of his department to develop a plan to meet the new expectations.

38.     In their comments analyzing the Teaching Effectiveness category, the committee specifically noted that, due to his initiative in developing hybrid online courses, Newman's student evaluations may not be an accurate reflection of his teaching because "total student responses for those sections are incredibly low (between one and nine students) resulting in an incomplete picture of student experiences." The committee recommended that "the methods for attaining student evaluations for online and/or hybrid courses needs serious revision." Further, the committee stated that, due to the transition to partially online student evaluations, "we believe that this indicator is not adequately valid for the period under review." Indeed, in 2014 the department revised its "Teaching Effectiveness" criterion to ignore student evaluations when less than 50% of the students in a class did not respond.

39.     As a follow-up to his Post-Tenure Review, Newman received a memorandum from Havidan Rodriguez (with copies to Dahlia Guerra and Pamela Anderson-Mejias) stating that, due to the "does not meet expectations" rating in the "good-to-excellent category of student evaluations" Newman was required to develop an action or remediation plan in order to address the area of concern. Despite disagreeing with the interpretation of the review, Newman did in fact develop an action plan, which was approved by the Department Chair and the Dean. With the development of this plan, Newman met all the requirements of the committee's recommendations, the university handbook, and the tenured-faculty review policies.

40.     In May of 2014, during Phase One of the UTRGV hiring process, Newman applied for a tenured position at UTRGV. In October of 2014, Newman was notified that he would not be

transitioned to UTRGV.  The reason given for rejecting his application was that he had purportedly failed to meet expectations regarding "Teaching Excellence" in the Post-Tenure Review, and therefore did not meet the hiring qualifications.

41.    On October 1, 2014, Newman filed an appeal with the UTRGV Appeal Committee. In November of 2014, Newman was informed that his appeal was denied.  No explanation was given for the denial.

42.    Being a veteran of the U.S. Army, Newman was entitled to preferential hiring treatment over any other candidate with similar qualifications.  In December of 2014, Newman wrote to Provost Havidan Rodriguez to question why his veteran's preference had not been taken into account in the hiring process.  Provost Rodriguez responded that because Newman did not meet the Phase One hiring criteria, he was not eligible to appeal the decision on his veteran's preferment.

43.    Ultimately, Newman was not offered tenure at UTRGV.  But, he was later offered a non-tenured role as a lecturer at the university.  Currently, Newman is working for the university in the same department teaching classes, only now with no tenure, reduced benefits and reduced pay.  Additionally, his prior tenured position consisted of three classes a semester which afforded enough time to research and write.  Currently, Newman is teaching five classes at two separate campuses 65 miles apart, leaving no time for any scholarly activity.

## IV.
## CAUSES OF ACTION

44.    Plaintiff repeats and realleges every allegation contained in Paragraphs 1 through 34 of this Complaint.

45.     As described in more detail in the paragraphs below, Defendants violated 42 U.S.C. § 1983 in that they wrongfully deprived Plaintiff of his constitutional rights while acting under the color of law.

46.     The award of tenure granted Plaintiff a vested property interest and right to continued employment.  Under state law and UTPA policy as stated in the UTPA Handbook of Operating Procedures § 6.2.9, tenure may only be revoked for incompetency, neglect of duty or other good cause after a hearing.[2]  Further, termination of tenure must be accompanied by written explanation describing the specific reasons for the termination and the professor must be given the opportunity for referral of the matter to a nonbinding alternative dispute resolution process.[3]

47.     The right to continued employment granted by tenure is a clearly established right that should be well known to any reasonable university official.  Indeed, most of the University Official Defendants are tenured professors themselves, so they well understand the nature of the right and process for termination.  Further, the Regent Defendants are senior education officials and attorneys, so also understand the nature of the right and process for termination.

48.     UTRGV was created as a combination of the predecessor universities, including UTPA.  However, the procedure developed for hiring tenured professors effectively terminated tenure for those professors not hired by UTRGV.  This termination of tenure was done without good cause, without hearing, and without alternative dispute resolution.  The procedure developed by Defendants was fundamentally flawed and deprived Plaintiff of his constitutional right to continued employment under color of State law and regulations promulgated and adopted by the State University Defendants, the Regent Defendants and the University Official Defendants.

---

[2] Texas Education Code § 51.942(c).
[3] Texas Education Code § 51.942(d).

49.     Even if the procedure were constitutionally sound, the process by which it was implemented violated Plaintiff's due process rights.   The procedure set up eight hiring qualifications.   Under the terms of the policy, if a tenured professor met all of the qualifications, he would be automatically hired and recommended for tenure.   For the vast majority of applicants, this is what happened.   Plaintiff met all eight qualifications too, but he was not offered a position or recommended for continued tenure.   There is no justification for this disparate treatment, or the arbitrary decision to terminate/withhold tenure from Plaintiff.

50.     Additionally, the hiring procedure established is unconstitutional and unfair as written and as applied.   The qualification requiring "has not received an overall 'unsatisfactory' or 'does not meet expectation' ratings on either of the two most recent annual reviews or the individual's most recent comprehensive periodic review" is fatally ambiguous.   Although the annual reviews contain a space for "overall" evaluations, the Post-Tenure Review (the comprehensive periodic review) contains no such rating.   It is unclear what would constitute an "overall" rating on the Post-Tenure Review, and so the standard is arbitrary as written.

51.     With such an ambiguous standard, the hiring committee's application of the standard was arbitrary and capricious.   Plaintiff received "Exceeds Expectations" or "Meets Expectations" on every annual performance review conducted.   Of the three categories evaluated in the Post-Tenure Review, Plaintiff exceeded expectations in two and received qualified criticism in the third.   Although some of the reviewers marked "Recommendations" that Plaintiff did not meet expectations, the Dean of the university marked her "Recommendation" that Plaintiff met expectations.   The stated qualification regarding "overall" ratings gives no notice or warning that such performance evaluations would disqualify the professor for automatic hiring and tenure.   The stated consequence of a "does not meet expectations" recommendation is that the Professor

develop a plan to address the area of concern, not termination of tenure. Plaintiff developed such a plan, and the plan was approved by the university officials.

52.     Further, the use of the 'Teaching Effectiveness' criterion to deprive Plaintiff of his right to continued employment was unconstitutional and unfair. The retroactive application of a new standard that was only implemented at the very end of the six-year review period is unfair, particularly since Plaintiff had been given all "exceeds expectations" and "meets expectations" reviews and thus had no opportunity to address or fix the alleged deficiency of which he had never been given any notice. Moreover, the review committee itself noted that the student evaluation criterion was fatally flawed as related to Plaintiff, due to his (elsewhere commended) initiative in developing hybrid online classes. These classes were a boon to the university and the students, but the nature of their attendance skewed the number of student evaluations received, which the review committee noted made the criterion invalid for purposes of evaluating Teaching Effectiveness. It is manifestly unjust to base the *de facto* termination of tenure on such a flimsy and admittedly invalid basis.

53.     Plaintiff had a right to continued employment guaranteed by both the award of tenure and the automatic hiring procedure established by the Regent Defendants, State University Defendants and University Official Defendants. He was deprived of this right under color of law by the University Official Defendants. Plaintiff was not afforded the right to present evidence or argument, was given no hearing and no meaningful appeal or post-decision hearing.

54.     Plaintiff had a vested right to employment based on the Texas Veteran's Employment Preferences statute, which created a reasonable expectation that he would be hired by UTRGV ahead of those with similar or lesser qualifications. The University Official Defendants deprived him of this right under color of law.

55.     Plaintiff was a respected, honored Professor holding tenure at the predecessor university.  He met all qualifications for the automatic hiring and tenure procedure.  Indeed, UTRGV implicitly admitted that he is a qualified professor when it hired him to teach substantially the same classes he had taught before as a Professor.  But, through their machinations the Regent Defendants and University Official Defendants managed to effectively terminate Plaintiff's tenure and reduce his pay and benefits.  Such behavior indicates evil motive or intent, which involves reckless or callous indifference to Plaintiff's federally protected rights.  Such conduct is malicious and deserves to be punished.

**V.**
**JURY DEMAND**

56.     Plaintiff demands a jury by trial for any and all issues proper to be so tried.

**VI.**
**PRAYER**

57.     Plaintiff respectfully requests that the Court enter judgment against Defendants as follows:

58.     Award Plaintiff back pay (plus interest) for lost salary and other benefits of employment of which Defendants' actions have deprived him (Regent Defendants and University Official Defendants in their individual capacities only);

59.     Reinstate Plaintiff's tenure and position as full Professor at University of Texas Rio Grande Valley (State University Defendants, Regent Defendants and University Official Defendants in their official capacities only);

60.     Award Plaintiff compensatory and special damages in an amount to be determined to compensate him for the harm to professional reputation, pain, suffering, mental anguish and emotional distress that Defendants' actions have caused him (Regent Defendants and University

Official Defendants in their individual capacities only). Plaintiff has been professionally humiliated and the wrongful termination of his tenure has already interfered with his scholarly activity and the publishing of a book, and will continue to interfere with his ability to publish scholarly works and thrive as an academic in the future;

61.     Pre-judgment and post-judgment interest (Regent Defendants and University Official Defendants in their individual capacities only);

62.     Award Plaintiff's reasonable attorney fees and litigation costs (Regent Defendants and University Official Defendants in their individual capacities only);

63.     Award punitive and/or exemplary damages in an amount sufficient to punish Defendants and deter future similar behavior (Regent Defendants and University Official Defendants in their individual capacities only); and

64.     Order such other and further relief the Court deems proper.


Respectfully Submitted,

By:     Mark Correro By: J.G. Tkkhut
                                        w/ permission

**Correro & Leisure, P.C.**

Lance Leisure
Texas State Bar No. 24048616
lance@correroleisure.com
Mark A. Correro
Texas State Bar No. 24045702
mark@correroleisure.com
2909 Hillcroft Avenue, Suite 350
Houston, Texas 77057
T:      (832) 916-3116
F:      (888) 508-1293

SNEED, VINE & PERRY, P.C.
Allen Halbrook
State Bar No. 08721300
900 Congress Avenue, Suite 300
Austin, Texas 78701
512-476-6955
512-476-1825 facsimile

**_Attorneys for Plaintiff_**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by certified mail, return receipt requested, on this the 4th day of January 2016, to:

Esteban Soto
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone:     (512) 462-2120
Facsimile:      (512) 320-0667
Email:             esteban.soto@texasattorneygeneral.gov
_ATTORNEY FOR DEFENDANTS_

Allen Halbrook